```
                 UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW HAMPSHIRE
```

William M. Fannon and
Catherine M. Fannon

    v.                                    Civil No. 16-cv-141-JD
                                          Opinion No. 2016 DNH 170
U.S. Bank, N.A., as Trustee
of MASTR Asset Backed Securities
Trust 2006-NCI, Mortgage Pass-Through
Certificates, Series 2006-NCI


O R D E R

William and Catherine Fannon brought suit against U.S. Bank, as Trustee of MASTR Asset Backed Securities Trust 2006-NCI, Mortgage Pass-Through Certificates, Series 2006-NCI, after the foreclosure sale of their home in April of this year.  They challenge the validity of the foreclosure sale on the grounds that U.S. Bank was not the holder of the note and that they rescinded their mortgage loan under 15 U.S.C. § 1635 before the sale.  They also allege claims of breach of the implied covenant of good faith and fair dealing and wrongful foreclosure.  U.S. Bank moves to dismiss all claims, and the Fannons object.

Standard of Review

A motion to dismiss for failure to state a claim is governed by Federal Rule of Civil Procedure 12(b)(6).  In considering a motion under Rule 12(b)(6), the court assumes the

truth of the properly pleaded facts and takes all reasonable inferences from those facts that support the plaintiff's claims. Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 104 (1st Cir. 2015). Based on the properly pleaded facts, the court determines whether the plaintiff has stated "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## Background

The Fannons bought the property at issue in this case, located in New Ipswich, New Hampshire, from Catherine's sister in 1998. In 2005, the Fannons refinanced their mortgage with New Century Mortgage Corporation. William signed a note for $107,000 that was secured by a mortgage on the property signed by both of the Fannons.

In 2006, Wells Fargo Bank, N.A. and its subsidiary, ASC, succeeded New Century as servicers of the loan. On February 1, 2006, Wells Fargo Bank, N.A. Master Servicer and Trust Administrator and U.S. Bank N.A., Trustee were parties to a pooling and servicing agreement ("PSA") that the Fannons allege created and set the terms for the MASTR Asset Backed Securities Trust.

New Century filed for bankruptcy in 2007. Pursuant to the bankruptcy plan, on January 24, 2008, New Century assigned the

Fannons' note and mortgage to U.S. Bank N.A., as Trustee for MASTR Asset Backed Securities Trust 2006-NCI.  The assignment is signed by Anita Antonelli, vice president of loan documentation at Wells Fargo, under a limited power of attorney.  On November 21, 2011, the mortgage and note were again assigned by New Century to U.S. Bank N.A., as Trustee for MASTR Asset Backed Securities Trust 2006-NCI, mortgage Pass-Through Certificates, Series 2006-NCI, with the assignment signed by Azza Zarroug, vice president of loan documentation at Wells Fargo, as attorney in fact for New Century.

By 2006, the Fannons were in default on their mortgage payments.  After they had missed fourteen payments, the Fannons entered a "Special Forbearance Agreement" that required five payments from November of 2008 through March of 2009.  The Fannons only made four of the five required payments.  In 2010 and 2013, the Fannons entered into trial modification plans but ASC, as servicer, found that the Fannons had not complied with the requirements.  U.S. Bank began foreclosure proceedings on April 16, 2015.

The Fannons retained counsel to assist them.  Their requests for another loan modification were denied.  The Fannons sent U.S. Bank a notice on May 15, 2015, to rescind their loan. U.S. Bank proceeded with foreclosure.

The Fannons filed a petition in Hillsborough County Superior Court in November of 2015 to stop the foreclosure sale. In the petition, the Fannons alleged claims that U.S. Bank lacked authority to foreclose because it did not possess the original "wet-ink" note, that the mortgage assignment to the Trust was void, that U.S. Bank did not possess both the mortgage and the note before giving notice of foreclosure, that "AOM Missed Securitization Deadlines," that the note and mortgage were not conveyed to the Trust "via Requisite Chain of Transfer," that U.S. Bank failed to mitigate losses, and seeking rescission.  After U.S. Bank moved to dismiss, the Fannons voluntarily dismissed all of their claims, and the case was terminated.

When the foreclosure sale was scheduled again, the Fannons filed another petition to stop the sale in Hillsborough County Superior Court on April 17, 2016.  U.S. Bank removed the case to this court on April 13, 2016, and moved to dismiss the complaint.  The foreclosure sale was held on April 29, 2016. U.S. Bank bought the property at the sale for $75,484.77.

The Fannons filed an amended complaint on May 20, 2016.  In their amended complaint, the Fannons allege:  Count I – Lack of Power and Authority to Foreclose—U.S. Bank Cannot Show That It Is Agent of the Noteholder or That it is the Noteholder, Count

4

II – Lack of Power and Authority to Foreclose—The Mortgage Assignments and Purported Note Negotiations are Void, Count III – Breach of the Covenant of Good Faith and Fair Dealing, Count IV – Rescission Pursuant to 15 U.S.C. § 1635 (Truth in Lending Act "TILA"), Count V – Wrongful Foreclosure.

## Discussion

U.S. Bank moves to dismiss all five of the Fannons' claims on the grounds that they have not alleged sufficient facts to state plausible claims for relief. The Fannons object, arguing that they have alleged enough to support their claims. U.S. Bank filed a reply, and the Fannons filed a surreply.

I. Lack of Power to Foreclose – Note

In support of their claim that U.S. Bank did not hold the note and, therefore, did not have the power to foreclose, the Fannons allege in the complaint that an ASC representative told Catherine Fannon in 2010 that the original note was shredded shortly after the closing. They also contend that the copies of the note produced by U.S. Bank differ from the original note. Specifically, the Fannons state that the copies do not include a prepayment penalty that is in the mortgage note and that the copies are signed by Steve Nagy, an alleged "robo signer."

U.S. Bank asserts that the Fannons failed to allege sufficient facts to show that it does not hold the original

note. Further, U.S. Bank represents that it does hold the original note, that its counsel has informed counsel for the Fannons that U.S. Bank holds the original note, and that it will produce the note for the court's inspection.[1] U.S. Bank also refutes the Fannons' theories based on the prepayment penalty rider in the mortgage and the "robo signer" issue.

In an effort to simplify the note issue, the court directed counsel to agree to a process for U.S. Bank to show the note to counsel for the Fannons. Although the meeting and inspection occurred, counsel for the Fannons continues to dispute the authenticity of the note held by U.S. Bank. Therefore, the authenticity of note cannot be resolved in the context of this motion.[2]

---

[1] U.S. Bank does not rely on the holding in Bergeron v. N.Y. Community Bank, 168 N.H. 63, 70-71 (2015), that an agent of the noteholder may foreclose.

[2] To the extent U.S. Bank represents that under New Hampshire law it was not required to hold the note in order to foreclose, it has not shown that to be the rule. Neither of the cases cited by U.S. Bank support that position. See Fortin v. Ocwen Loan Servicing, LLC, 2015 WL 5693115, at *5 (D.N.H. Sept. 28, 2015); Mason v. Wells Fargo Bank, N.A., 2014 WL 2737601, at *4 (D.N.H. June 17, 2014); see also Bergeron, 168 N.H. at 68 (assuming without deciding that the authority to foreclose requires the note and holding that a mortgagee that is a properly authorized agent of the noteholder has power to foreclose).

II. <u>Lack of Power and Authority to Foreclose – Mortgage Assignments and Note Transfers Are Void</u>

In their objection to the motion to dismiss, the Fannons explain that their challenges to the assignments of the mortgage and the transfers of the note in Count II are relevant only if U.S. Bank claims that its authority to foreclose was based on an agency relationship under Bergeron. In other words, Count II is not a separate claim but a response to an anticipated defense to Count I. U.S. Bank does not rely on Bergeron. Count II is dismissed without prejudice to the Fannons to raise the same issues if U.S. Bank were to claim the power to foreclose based on an agency relationship under Bergeron.

III. <u>Breach of the Covenant of Good Faith and Fair Dealing</u>

In Count III, the Fannons allege that U.S. Bank, through its servicing agent, violated the implied covenant of good faith and fair dealing by failing to consider them for a loan modification. Under New Hampshire law, the implied covenant of good faith and fair dealing limits the discretion of one party "to deprive another party of a substantial proportion of the agreement's value." Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143 (1989). The implied covenant, however, cannot be invoked to require a lender to modify or restructure a loan. Riggieri v. Caliber Home Loans, Inc., 2016 WL 4133513, at *6-*7 (D.N.H. Aug. 3, 2016) (citing cases).

Therefore, the Fannons have not stated a plausible claim for relief in Count III.

IV. Recission Pursuant to § 1635

The Fannons assert that they rescinded their mortgage and loan pursuant to § 1635 of TILA by a notice sent on May 15, 2016. Because U.S. Bank did not respond within twenty days, the Fannons contend, U.S. Bank had no rights under the mortgage and note to foreclose. In support, the Fannons allege that the "true lender" for the note was not known and was not disclosed to them and, therefore, "the loan was never consummated." As a result, they reason, they were able to rescind the note and mortgage eleven years after they signed both.

Under TILA, a borrower has the right to rescind the loan transaction within three days after consummation of the loan or delivery of the information and forms required for rescission. § 1635(a). The right to rescind, however, expires three years after consummation of the loan or when the property is sold whether or not all disclosures have been made within that time. § 1635(f); Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790, 792 (2015). Consummation of the loan, for purposes of § 1635(f), occurs when the borrower "becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13) ("Regulation Z"). The Official Staff Interpretation of

8

Regulation Z provides that state law governs when a contractual obligation is created.  Grimes v. New Century Mortg. Corp., 340 F.3d 1007, 1009 (9th Cir. 2003); Murphy v. Empire of Am., FSA, 746 F.2d 931, 933-34 (2d Cir. 1984).

Relying on Jackson v. Grant, 890 F.2d 118, 121 (9th Cir. 1989), the Fannons argue that because New Century did not actually provide the funds for their loan and the loan document did not identify the actual lender, no meeting of the minds occurred and the loan was never consummated.  In Jackson, however, the loan documents provided in February of 1983 identified only a "broker" or an "arranger of credit" and specifically provided that the "broker" or "arranger of credit" would not be the lender.  Id.  Under the terms of those documents, the court found, no one had agreed to extend credit to the borrower so that no loan was consummated at that time.  Id.  The loan was later consummated in April of 1983 when a lender was identified and the loan closed, making that the applicable date for the three-year period under § 1635(f).  Id. Here, however, New Century was identified as the lender in the note from the beginning, making Jackson inapplicable to this case.

The Fannons theory that the loan was not consummated has been overwhelmingly rejected by other courts.  See, e.g.,

Schiano v. MBNA, 2016 WL 4257761, at *9-*10 (D.N.J. Aug. 10, 2016); Johnson v. Bank of N.Y. Mellon, 2016 WL 4211529, at *4 (W.D. Wash. Aug. 10, 2016); Wilder v. Ogden Ragland Mortg., 2016 WL 4440487, at *4-*5 (N.D. Tex. July 29, 2016)("Plaintiff's claim that the three years period to rescind the loan remains open, because Defendants failed to identify the true lender and the loan was never consummated, is nonsensical."); Almutarreb v. Nationstar Mortg. Holdings, 2016 WL 3384067, at *5 (N.D. Cal. June 20, 2016); Tyshkevich v. Wells Fargo Bank, N.A., 2016 WL 3077580, at *4 (E.D. Cal. May 31, 2016)[3]; Smith v. Wells Fargo Bank, N.A., --- F. Supp. 3d ---, 2016 WL 370697, at *4 (D. Conn. Jan. 29, 2016).

The result is no different under New Hampshire law. "A valid enforceable contract requires offer, acceptance, consideration, and a meeting of the minds." Tessier v. Rockefeller, 162 N.H. 324, 339 (2011). A meeting of the minds occurs when there is agreement on all essential terms of the contract. Syncom Indus., Inc. v. Wood, 155 N.H. 73, 82 (2007).

In this case, the note was an offer by New Century to loan William Fannon $107,000, with interest, subject to certain

---

[3] The Fannons cite an earlier order in Tyshkevich to support their theory that the limitations period did not run because the loan was not consummated. The subsequent decision makes clear that the Fannons are mistaken.

conditions, which are not disputed.  William accepted the offer on September 30, 2005, by signing the note.  There is no dispute that the Fannons did receive the money, that the loan closed, or that they made payments under the terms of the note.  The Fannons make no argument to show that the identity of the source of the money to fund the loan was essential to the contract.  Therefore, there was an offer, acceptance, consideration, and a meeting of the minds so that the loan was consummated.  Further, if, as the Fannons assert, the loan had <u>never</u> been consummated, then TILA would not apply because there would be no loan to rescind.  See, e.g., Wilder, 2016 WL 4440487, at *4-*5; Samuelson v. Wells Fargo Bank, N.A., 2016 WL 1222222, at *2 (N.D. Ind. Mar. 29, 2016).

V.   <u>Wrongful Foreclosure</u>

The Fannons allege in Count V that U.S. Bank wrongfully foreclosed on their property because it did not "obtain a fair and reasonable price for the property being foreclosed."  They allege that the property was sold to U.S. Bank for $75,484.00 when it was worth $150,000 and that U.S. Bank claims that the Fannons still owe approximately $200,000.

Under New Hampshire law, a mortgagee as the seller of property has a duty of good faith and due diligence that obligates the mortgagee to "exert every reasonable effort to

obtain a fair and reasonable price under the circumstances." Murphy v. Fin. Dev. Corp., 126 N.H. 536, 541 (1985) (internal quotation marks omitted). The duty of good faith and the duty of due diligence are distinct, and claims of breach are considered separately. Id. at 541; see also People's United Bank v. Mt. Home Developers of Sunapee, 858 F. Supp. 2d 162, 169 (D.N.H. 2012).

U.S. Bank moves to dismiss on the ground that the Fannons have not stated a claim because they did not allege that U.S. Bank acted in bad faith and the due diligence duty is satisfied by its compliance with RSA 479:25. U.S. Bank also relies on People's, 858 F. Supp. 2d at 169. In response, the Fannons reiterate their allegations in the complaint that U.S. Bank breached its duty of due diligence because the sale price was half of the value of the property and much less than the amount due on the note, that U.S. Bank was the only bidder because no one else attended the auction, and that U.S. Bank should have delayed the sale to get more bidders.

"[A] mortgagee executing a power of sale is bound both by the statutory procedural requirements [of RSA 479:25] and by a duty to protect the interests of the mortgagor through the exercise of good faith and due diligence." Murphy, 126 N.H. at 540 (emphasis added). Even when a mortgagee complies with the

requirements of RSA 479:25, those efforts may not be sufficient to demonstrate due diligence.  Id. at 543; see also People's, 858 F. Supp. 2d at 168.  Instead, due diligence may require additional effort to obtain "a fair and reasonable price under the circumstances."  Murphy, 126 N.H. at 540 (internal quotation marks omitted).

In People's, the court dismissed the claim based on breach of the duty of good faith but did not dismiss the claim based on a breach of the duty of due diligence.  858 F. Supp. 2d at 170.  The claim for breach of the duty of due diligence remained in the case.  Contrary to U.S. Bank's theory, People's does not support an argument that the Fannons failed to allege a claim of breach of the due diligence duty.[4]  Therefore, U.S. Bank has not shown that the Fannons failed to state a claim of wrongful foreclosure based on the duty of due diligence.

---

[4] In its reply, U.S. Bank charges that the Fannons waived any argument that they were harmed by the foreclosure sale price because they did not dispute U.S. Bank's assertion that they had no equity in the property.  The Fannons alleged in the amended complaint that they suffered a loss of their equity in the property and that U.S. Bank claims to be owed approximately $200,000.  In addition, U.S. Bank's theory about the Fannons's failure to assert a loss, based on Riggieri v. Caliber Home Loans, Inc., 2016 WL 4133513 (D.N.H. Aug. 3, 2016), is difficult to follow and unpersuasive.

Conclusion

For the foregoing reasons, the defendant's motion to dismiss (doc. no. 14) is granted as to Counts II, III, and IV, but is denied as to Counts I and V.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph DiClerico, Jr.
United States District Judge

September 20, 2016

cc: Stephen T. Martin, Esq.
    Michael R. Stanley, Esq.